Yitzchak Zelman, Esq.
California Bar No. 350053
MARCUS & ZELMAN, LLC
701 Cookman Ave, Suite 300
Asbury Park, NJ 07712
(732) 695-3282
yzelman@marcuszelman.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JASON PRICE, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| LEXISNEXIS RISK SOLUTIONS, INC., | |
| Defendant. | |

**COMPLAINT**

Plaintiff Jason Price (formerly Jason Kiederling) ("Plaintiff") brings this action on an individual basis, seeking statutory and other damages against Defendant LEXISNEXIS

RISK SOLUTIONS, Inc. ("LEXISNEXIS") and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is an action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

2. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

3. To that end, the FCRA imposes the following twin duty on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports; and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies.

4. The FCRA provides consumers with a private right of actions against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

5. Defendant LEXISNEXIS has produced and sold consumer reports concerning Plaintiff's background that wrongfully and/or misleadingly reported Plaintiff's driving

history by reporting that Plaintiff did not have a valid license and had a commercial driving license ("CDL") suspension. However, Plaintiff simply moved states from Florida to California and so did not renew his Florida CDL, but had a valid California driver's license.

6. As a result of LEXISNEXIS's wrongful reporting, Plaintiff was damaged by, without limitation, harm to his reputation, wasted time, and considerable distress and frustration.

## PARTIES

7. Plaintiff is a natural person and resident of the State of California and qualifies as a "consumer" as defined and protected by the FCRA.

8. Defendant LEXISNEXIS RISK SOLUTIONS, Inc. is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f), as it "regularly engages in whole or in part in the practice of assembling or evaluating credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce. Defendant LEXISNEXIS is a Delaware corporation that maintains its primary place of business at 1 Montgomery Street, San Francisco, California 94104.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. Defendant has its primary place of business in the State of California, regularly conducts business within the State of California, and

violated Plaintiff's rights under the FCRA in the State of California as alleged more fully below.

10. Venue is proper in this District under 28 U.S.C. 1391(b) because Plaintiff resides in this District, Defendant conduct regular business in this District, and communications giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

11. Prior to September of 2023, Plaintiff maintained insurance for his primary personal vehicle through Progressive.

12. On or around September 25, 2023, Plaintiff received an email from Progressive indicating that his insurance premiums were to be substantially increased due to the information contained in a consumer report provided to Progressive by Defendant.

13. The email indicated that Plaintiff's premiums were being increased due to a "Motor Vehicle Report" or "MVR" furnished by Defendant. This report contained information indicating that Plaintiff's license was suspended as of August 2, 2022.

14. Plaintiff was understandably frustrated and confused, as this is not the first instance in which such misreporting has occurred. When Plaintiff relocated from Florida to California, rather than paying fees to maintain his Florida CDL, he suspended the *commercial endorsement* on this license as he was no longer driving a tractor-trailer, as is common practice. Moreover, at this time, Plaintiff had a valid driver's license in the State of California.

15. Accordingly, Plaintiff was required to spend hours communicating with Progressive, explaining and providing proof that his license had not been suspended, that he had simply forfeited the *commercial endorsement* of his Florida license, that he had a valid California license, and that his premiums should not thereby be affected.

16. As a direct result of Defendant's inaccurate reporting, Plaintiff has been damaged.

17. Because of the inaccurate and/or misleading information provided to Plaintiff's insurer by Defendant, Plaintiff's premiums were increased and he was forced to waste time taking remedial measures he would not have otherwise had to take if not for Defendant's conduct.

18. As a direct result, Plaintiff has suffered distress and frustration due to the damage to his reputation from having this inaccurate driver history information distributed, as if he is unfit to be behind the wheel.

19. It is patently inaccurate and/or materially misleading to report the suspension of a commercial endorsement as a suspension of a license, which would imply Plaintiff was unable to legally drive a vehicle, especially when Plaintiff had a valid license in California.

20. Upon information and belief, had Defendant not erroneously and inaccurately reported an inaccurate driver history on his background report, Plaintiff would not have had his premiums increased and been forced to waste time fixing Defendant's mistake.

21. Upon information and belief, Defendant fails to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information it provides to insurers.

22. Upon information and belief, Defendant knowingly and willfully maintains deficient procedures because reporting more information is more profitable than reporting less and potentially leaving information off of a consumer report.

23. For example, upon information and belief, Defendant allowed a misleading and incomplete driving history to appear on Plaintiff's consumer report without first confirming the accuracy with the actual records, which are readily and publicly available.

24. Defendant regularly seeks out and procures driver history information with the intention of including it in the consumer reports it sells for profit.

25. Instead of employing reasonable procedures as required by the FCRA, Defendant blindly collects information from unreliable third-party vendors to repackage and sell in its own motor vehicle screening products.

26. Alternatively, upon information and belief, Defendant buys consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is of maximum possible accuracy.

27. Defendant, a sophisticated consumer reporting agency, is aware that driver history information is often inaccurate, incomplete or misleading.

28. Upon information and belief, Defendant purchased Plaintiff's information from one or more third-party vendors that merely compile consumer data from various online sources without verifying its accuracy with actual court records.

29. Upon information and belief, none of Defendant's third-party vendors warrant the accuracy of the information they sell.

30. Upon information and belief, Defendant does not exercise due diligence in ensuring it is contracting with and/or utilizing reliable third-party vendors.

31. Upon information and belief, Defendant does not conduct periodic quality assurance audits to ensure that it is receiving reliable consumer information from its third-party vendors.

32. Upon information and belief, Defendant has been sued by consumers under the FCRA in the past for erroneously reporting inaccurate driver records.

33. Therefore, Defendant has notice that its procedures often result in the preparation of inaccurate consumer reports and dissemination of inaccurate consumer information.

34. Upon information and belief, Defendant knew that the furnisher or third-party vendor provides inaccurate consumer data with some regularity.

35. Upon information and belief, Defendant blindly relied on the information provided by the furnisher or third-party vendor despite having reason to know it may be unreliable.

36. Upon information and belief, Defendant does not maintain reasonable procedures to assure it reports consumer information with maximum possible accuracy because it would be more expensive to independently verify the accuracy of the information it includes in its consumer reports and ensure it is "maximally accurate" and not misleading.

37. It is wholly unreasonable for Defendant to maintain procedures that it knows often lead to inaccurate and misleading consumer reporting with grave consequences.

38. Despite knowing that its procedures are unreasonable, Defendant recklessly, knowingly, and/or negligently fails to employ procedures that assure that maximum possible accuracy of consumer information compiled and published in its consumer reports.

39. Upon information and belief, Defendant does not independently investigate the information it procures from third-party vendors before including it in consumers' background reports.

40. Instead, Defendant has unreasonably decided that it is entitled to rely completely on third-party vendors to ensure the information included in its consumer reports is accurate.

41. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to prevent.

42. Defendant knows that its services are used to make significant consumer decisions.

43. Upon information and belief, Defendant know or should have known that insurers make decisions on insurance status based solely on the information contained in its consumer reports.

44. Upon information and belief, Defendant knew or should have known the negative impact that reporting a consumer's inaccurate and misleading driving history, such as failing to report a valid license and misleadingly reporting a CDL endorsement suspension as a license suspension, was likely to have on that consumer's insurance status.

45. Upon information and belief, Defendant purchases public record information from third-party vendors.

46. Upon information and belief, those third-party vendors explicitly disclaim the accuracy of the information they provide to Defendant.

47. Upon information and belief, Defendant reports and publishes the information provided by the third-party vendors without verifying its accuracy.

48. Upon information and belief, Defendant knows or has reason to know that the third-party vendors it procures consumers' information from often provides inaccurate, misleading, and incomplete records.

49. Upon information and belief, Defendant reports and publishes unverified public records information without employing reasonable procedures to assure its accuracy because employing such procedures would cut into its profits.

50. At common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

51. As a direct result of Defendant's conduct, Plaintiff's insurance premiums were increased.

52. As a further direct result of Defendant's conduct, Plaintiff suffered mental distress, including humiliation, embarrassment, and considerable stress from the dissemination of defamatory statements regarding her person and the required efforts to rectify the situation.

53. As a direct result of Defendant's inaccurate and/or misleading reporting, Plaintiff has suffered actual damages including, but not limited to: job denial, loss of income, wasted time, financial insecurity, defamatory harm to his reputation and emotional distress, including but not limited to, humiliation, embarrassment, stress, frustration, and mental anguish.

54. Defendant's violations of the FCRA were willful. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

55. Additionally, Defendant's violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1781o.

56. In any event, Defendant is liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## CAUSES OF ACTION

### COUNT I
### Violation of the FCRA, 15 U.S.C. § 1681e

57. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

58. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. § 1581e(b) (emphasis added).

59. LEXISNEXIS violated § 1681e(b) because it failed to follow reasonable procedures to ensure the maximum possible accuracy of the information it attributed to Plaintiff in its consumer reports.

60. Specifically, LEXISNEXIS willfully, intentionally, recklessly, and/or negligently violated § 1681e(b) by inaccurately and/or misleadingly reporting driver history with a misleading "suspension".

61. LEXISNEXIS's misconduct was a direct and proximate cause of Plaintiff's injuries, as alleged herein.

62. LEXISNEXIS is therefore liable to Plaintiff for its willful and/or negligent failures to follow reasonable policies and procedures.

63. As a result of LEXISNEXIS's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

64. LEXISNEXIS's violations of the §1681i were willful. Therefore, LEXISNEXIS is liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial, pursuant to 15 U.S.C. § 1681n.

65. Additionally, LEXISNEXIS's violations of § 1681i were at least negligent. Therefore, LEXISNEXIS is liable to Plaintiff for statutory and actual damages, pursuant to 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

i. Awarding Plaintiff statutory money damages, actual damages and punitive damages pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

ii. Awarding attorneys' fees and costs as required by 15 U.S.C. §§ 1681n and/or 1681o, and other relief; and

iii. Awarding any other such relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: October 17, 2023          By:     /s/ Yitzchak Zelman

                                                      Yitzchak Zelman, Esq.
                                                      MARCUS & ZELMAN, LLC

                                                      *Attorneys for Plaintiff*